1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12

QUENTIN WASHINGTON and CURTIS R.
WILSON, III,

13

Plaintiffs,

14

v.

15
16
17
18

POLICE OFFICER BRIAN SCHAFFER,
CITY OF VANCOUVER, WESTFIELD
CORPORATION, INC. dba WESTFIELD
aka VANCOUVER MALL, and
PROFESSIONAL SECURITY
CONSULTANTS, INC.,

Defendants.

Case No.  C05-5372RJB

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

19
20

This matter comes before the court on Defendant City of Vancouver's Motion for

21

Summary Judgment (Dkt. 37) and Defendant Police Officer Brian Schaffer's Motion for Summary

22

Judgment (Dkt. 38-1). The court has considered the pleadings filed in support of and in

23

opposition to the motions and the file herein.

24

## I. FACTUAL AND PROCEDURAL BACKGROUND

25

On September 13, 2003, plaintiffs Curtis R. Wilson, III and Quentin Washington drove

26

Mr. Wilson's Mercedes and Lexus vehicles to the Vancouver Mall. Dkt. 38-5 at 12-13. They

27

parked the cars at the end of the mall parking lot near a C-Tran bus terminal and away from other

28

ORDER
Page - 1

1   vehicles. *Id.* Messrs. Wilson and Washington waited in the parking lot for Belinda Bambora, Mr.

2   Washington's girlfriend, who was shopping in the mall. Dkt. 38-5 at 11.

3          City of Vancouver Police Officer Brian Schaffer was in the mall security office with James

4   Robert, the security captain for the mall, at the time. A C-Tran security guard reported a possible

5   vehicle prowl in progress in the mall parking lot to Jacob Fisher, a security guard for the mall.

6   Dkt. 38-12 at 2. The report was based upon the guard's observations of the plaintiffs in the mall

7   parking lot. Mr. Fisher announced on his security radio that he was going to investigate the

8   report. Mr. Fisher was accompanied by Joseph Gray, another mall security guard. *Id.* Vehicle

9   prowling had been a frequent problem in the mall parking lot. Dkt. 38-12 at 4. Other than the

10  plaintiffs' activity in standing next to Mr. Wilson's cars, there is no evidence of a vehicle prowl on

11  that particular day.

12         The security guards drove up to the plaintiffs as Mr. Washington was reaching for and

13  dropped a CD. Dkt. 38-12 at 6. The guards asked Mr. Washington if he was ok. Mr. Washington

14  indicated that he did not need assistance, so the guards drove away. Dkt. 38-12 at 2. These events

15  were transmitted by radio to Captain Robert. Dkt. 38-13 at 3.

16         To get out of the sun, the plaintiffs walked over to a grassy area and then returned to wait

17  by the vehicles. Dkt. 38-12 at 7. The plaintiffs then walked over to the Nordstrom entrance,

18  lingered, and entered. *Id.* The plaintiffs were under surveillance as they walked inside the mall and

19  made their way to the restrooms. Dkt. 38-3 at 4. Messrs. Washington and Wilson entered the

20  men's restroom.

21         Captain Robert asked Officer Schaffer to make contact with the plaintiffs and follow up on

22  Mr. Fisher's report. *Id.* Officer Schaffer entered the men's restroom with three or four mall

23  security guards and instructed the plaintiffs that he was going to handcuff them in order to

24  conduct an investigation. Dkt. 51 at 40. The level of specificity with which Officer Schaffer

25  informed the plaintiffs that he was conducting an investigation is unclear, but that has no bearing

26  here. *Compare* Dkt. 50-3 at 20-21 (no explanation given) *with* Dkt. 51 at 40-41 (plaintiffs told

27  they were not under arrest but were being investigated for going into a vehicle, for a crime, or for

28

ORDER
Page - 2

1  vehicle prowling), *and* Dkt. 38-3 at 5 (plaintiffs told they were being investigated for an alleged

2  vehicle prowl and being handcuffed for purposes of officer safety). Officer Schaffer handcuffed

3  Mr. Washington. Dkt. 38-7 at 5. Mr. Wilson asked twice for permission to wash his hands before

4  being handcuffed and was allowed to do so. Dkt. 38-6 at 1.

5      Officer Schaffer told Mr. Wilson to go to the back of the restroom and sit on the floor.

6  Dkt. 38-6 at 2.  Mr. Wilson refused to sit on the floor. *Id.* at 3. Officer Schaffer told one of the

7  security guards to take Mr. Washington out of the restroom. Dkt. 38-7 at 5. Officer Schaffer and

8  one security guard stayed with Mr. Wilson, and the other guards stayed with Mr. Washington

9  outside of the restroom. Dkt. 38-6 at 15.

10     Officer Schaffer asked to look inside of Mr. Wilson's backpack, but Mr. Wilson did not

11 allow the search. Dkt. 38-6 at 2. Officer Schaffer did not look inside the backpack but did move

12 it. *Id.* Officer Schaffer pointed a finger in Mr. Wilson's face and informed him that he had

13 witnesses and would "take his ass to jail" if he lied. Dkt. 38-5 at 4. Officer Schaffer disputes this.

14 Dkt. 38-3 at 7. Officer Schaffer asked Mr. Wilson for his name and date of birth and questioned

15 him about the car he drove to the mall, and it appears that Mr. Wilson answered all of the officer's

16 questions. Dkt. 38-6 at 3. He described the vehicle but did not remember the license plate. *Id.* Mr.

17 Wilson told the officer that he owned the Mercedes. *Id.* Mr. Wilson did not volunteer his keys to

18 the Mercedes as proof of ownership or make mention of the Lexus. *Id.* at 4. Mr. Wilson's

19 handcuffs were too tight, but he did not tell this to Officer Schaffer because he did not think the

20 officer would be responsive. *Id.* at 4-5. Mr. Wilson and Officer Schaffer were not getting along

21 well. *Id.* at 45.

22     Officer Schaffer went back and forth between the plaintiffs to question them separately.

23 Dkt. 38-8 at 9. He similarly asked Mr. Washington for his name and date of birth and questioned

24 him about the car he drove to the mall. Dkt. 38-8 at 10, Dkt. 38-7 at 5. Mr. Washington

25 responded that he drove the Lexus. Dkt. 38-7 at 6. Officer Schaffer asked Mr. Washington to

26 describe both vehicles, and he complied. Mr. Washington did not volunteer the keys of the Lexus

27 as proof that he had driven it to the mall. *Id.* at 8-9. Officer Schaffer told Mr. Washington that he

28

1    was lying several times. Dkt. 38-7 at 6. When he removed the handcuffs, Officer Schaffer told Mr.

2    Washington that the reason for handcuffing him was that he was "a big guy" and Officer Schaffer

3    did not want an altercation. *Id.* at 6-7.

4          The parties contest how long the plaintiffs were in handcuffs. During the incident, Officer

5    Schaffer made several calls to the Clark Regional Emergency Services Agency, which

6    automatically time stamps all transmissions. According to Officer Schaffer's call history for the

7    incident, the call was received at 19:29 and cleared at 19:55. Dkt. 39.

8          The plaintiffs' amended complaint now alleges that Officer Schaffer violated their right to

9    be free from unreasonable searches and seizures under the Fourth Amendment and 42 U.S.C. §

10   1983, committed discrimination under RCW 49.60.030, and engaged in a conspiracy to violate

11   their rights under 42 U.S.C. § 1983. Dkt. 5, Dkt. 49. As to the City of Vancouver, the plaintiffs

12   now allege only discrimination in violation of RCW 49.60.030. Dkt. 50-1 at 2. The plaintiffs seek

13   compensatory damages, punitive damages, attorney's fees, and costs. *Id.* Officer Schaffer moves

14   for summary judgment on all claims. The City of Vancouver moves for summary judgment on the

15   racial discrimination claim and seeks attorney's fees under 42 U.S.C. § 1988. The other parties

16   are not subject to these motions.

17                                    **II. DISCUSSION**

18   **A. SUMMARY JUDGMENT STANDARD**

19         Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

20   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

21   to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

22   P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

23   fails to make a sufficient showing on an essential element of a claim in the case on which the

24   nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

25   There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

26   rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

27   *Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

28

ORDER
Page - 4

1   evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a

2   genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

3   factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v.*

4   *Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

5   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

6          The determination of the existence of a material fact is often a close question. The court

7   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

8   e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*

9   *Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of

10  the nonmoving party only when the facts specifically attested by that party contradict facts

11  specifically attested by the moving party. The nonmoving party may not merely state that it will

12  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

13  to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

14  Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

15  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

16  **B. MOTION TO STRIKE**

17         In his reply, Officer Schaffer moves to strike the plaintiffs' recitation of the facts on the

18  grounds that no supporting affidavits were filed and the statements contained in the exhibits filed

19  in support of the response were not made under oath as required by Federal Rule 56(e). Dkt. 58-1

20  at 1-2. Much of the response relies upon transcripts of the plaintiffs' internal affairs interviews

21  with the Vancouver Police Department, which were not administered under oath. *See* Dkt. 50-2,

22  50-3. The court should therefore grant the motion and strike the portions of the response

23  attributable solely to these documents.

24  **C. QUALIFIED IMMUNITY**

25         Officer Schaffer contends that he is entitled to qualified immunity because the

26  constitutional rights at issue are not clearly established and because a reasonable officer would

27  have believed his conduct was lawful and reasonable. Dkt. 38-1 at 21. The plaintiffs maintain that

28

ORDER
Page - 5

1 | the right to be free from a *Terry* stop absent reasonable suspicion and free from an arrest absent

2 | probable cause is clearly established. Dkt. 50-1 at 16. The plaintiffs also contend that a reasonable

3 | officer would not believe that Officer Schaffer's actions were lawful. *Id.* at 17.

4 |       Government officials who are sued in their official capacity have qualified immunity from

5 | suit absent evidence of incompetence or knowing violation of the law. *Anderson v. Creighton*,

6 | 483 U.S. 635, 638 (1987). This rule shields government officials from suit in order to afford relief

7 | to plaintiffs without unduly hindering officials' performance of their governmental duties. *Id.*

8 | Qualified immunity is not merely a defense to liability; it is an entitlement to immunity from suit in the

9 | first place. *Devereaux v. Perez*, 218 F.3d 1045, 1052 (9th Cir. 2000), *reh'g en banc*, *Devereaux v.*

10 | *Abbey*, 263 F.3d 1070 (9th Cir. 2001).

11 |       The defense of qualified immunity has three steps. First, there must be a violation of a

12 | constitutional right. *Saucier*, 533 U.S. at 201. At this stage, the facts are viewed in the light most

13 | favorable to the injured party. *Id.* Absent such a violation, there is no need to pursue the

14 | remaining qualified immunity analysis. *Id.* Second, the right must be so clearly established that a

15 | reasonable officer would be on notice of its existence and parameters. *Id.* at 199; *Romero v.*

16 | *Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). This burden rests with the plaintiff. *Romero*,

17 | 931 F.2d at 627. Third, the officer must demonstrate that a reasonable officer could have believed

18 | the conduct was lawful. *Id.* Qualified immunity is "designed to spare a defendant not only of

19 | unwarranted liability, but unwarranted demands customarily imposed upon those defending a long

20 | drawn-out lawsuit." *Devereaux*, 218 F.3d at 1052.

21 | **1. CONSTITUTIONAL RIGHTS VIOLATION**

22 |       The plaintiffs allege that Officer Schaffer violated their rights to be free from an

23 | investigative detention not supported by reasonable suspicion and to be free from an arrest not

24 | supported by probable cause. Dkt. 50-1 at 11-15.

25 |       **a. Investigative Detention and Arrest**

26 |       The Fourth Amendment applies even to short detentions that do not amount to arrests.

27 | *U.S. v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). Such an investigatory stop

28 |

1  satisfies the Fourth Amendment only if the police officer has a "a reasonable suspicion supported

2  by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause."

3  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

4      The inquiry into "reasonable suspicion" is less demanding than for probable cause, but the

5  officer must "articulate more than an 'inchoate and unparticularized suspicion' or 'hunch' of

6  criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

7      Particularized suspicion has two elements. *Montero-Camargo*, 208 F.3d at 1129. First, the

8  assessment must be based upon the totality of the circumstances. *Id.* Second, the assessment must

9  create a reasonable suspicion that the person being stopped has committed or is about to commit

10  a crime. *Id*. Profiling "likely to sweep many ordinary citizens into a generality of suspicious

11  appearance" is insufficient. *Id.* Conduct that is "entirely innocuous" when viewed in isolation may

12  properly lead to reasonable suspicion. *Id.* at 1130.

13      The reasonable suspicion inquiry does not depend upon "whether particular conduct is

14  'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of 'noncriminal

15  acts.'" *Sokolow*, 490 U.S. at 10. Innocuous conduct is insufficient unless there is "other

16  information or surrounding circumstances of which the police are aware, which, when considered

17  along with the otherwise innocuous conduct, tend to indicate criminal activity has occurred or is

18  about to take place." *Montero-Camargo*, 208 F.3d at 1130.

19      An officer's own experiences are relevant, but such experiences are not an independent

20  factor in the analysis. *Id.* at 1130. Rather, they provide a backdrop against which to view the facts

21  as long as the officer draws objectively reasonable inferences. *Id.*

22      In certain circumstances, an investigatory detention may constitute an arrest requiring

23  probable cause. If the circumstances justify a concern for the officer's personal safety, the use of

24  force and intrusive techniques in effecting the stop does not convert it into an arrest. *U.S. v.*

25  *Jacobs*, 715 F.2d 1343, 1345-46 (9th Cir. 1983). The standard for judging the police officer's use

26  of intrusive techniques is reasonableness based upon several factors:

27      Despite the absence of a bright-line rule, our cases make clear that we have only allowed
         the use of especially intrusive means [typically involving more than the use of handcuffs]

28

of effecting a stop in special circumstances, such as 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur. Clearly, some combination of these factors may also justify the use of aggressive police action without causing an investigatory stop to turn into an arrest.

*Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996). The use of handcuffs is an important element to consider when determining whether an arrest has occurred:

On the one hand, handcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical Terry stop. On the other hand, police conducting on-the-scene investigations involving potentially dangerous suspects may take precautionary measures if they are reasonably necessary. The purpose of the Terry frisk is 'to allow the officer to pursue his investigation without fear of violence.'

*U.S. v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982).

To determine whether the plaintiffs have successfully alleged a constitutional violation, the court must first determine whether the plaintiffs have successfully alleged that Officer Schaffer's conduct amounted to investigative detention, an arrest, or both. There is no allegation that Officer Schaffer was involved in the parking lot discussion. Therefore, only his conduct surrounding the investigation in and around the mall restroom is at issue. If handcuffing the plaintiffs was a reasonably necessary precautionary measure to protect his safety, no arrest occurred, and the lower reasonable suspicion standard applies. *See* Dkt. 51 at 40 (first contact with plaintiffs was handcuffing them in the restroom).

Officer Schaffer cites several factors that led to his decision to handcuff the plaintiffs. First, Officer Schaffer contends that he considered himself a lone officer in the encounter because he was unsure whether the mall security guards were trained and at least one guard was small in stature. Dkt. 38-1 at 10. He admits that he did rely on the security guards to guard the plaintiffs during his questioning and may have given them instructions. Dkt. 51 at 41, Dkt. 38-3 at 6, Dkt. 38-7 at 5 (Mr. Washington remembers Officer Schaffer instructing a guard to escort him outside of the restroom.).

Second, Officer Schaffer contends that Mr. Wilson was argumentative. Dkt. 51 at 42, 38-3 at 6. The basis for this conclusion is extremely unclear. While Officer Schaffer may have

1   overheard radio transmissions concerning Mr. Washington's demeanor in the parking lot, these

2   security guard assessments appear to be based upon Mr. Washington's short, one-word response

3   to the guards' offer to help. *See* Dkt. 38-12 at 5 (In the parking lot, Mr. Washington was

4   annoyed, and his tone was cold.); Dkt. 38-14 at 6 (In the parking lot, Mr. Washington was

5   unfriendly and standoffish.). Mr. Wilson admits that he was upset at the time. Dkt. 38-6 at 12. In

6   his internal affairs interview, Officer Schaffer labeled Mr. Wilson as "argumentative," apparently

7   because he asked a lot of questions about why he was being detained. *See* Dkt. 38-20 at 1. The

8   defendant's proffered "expert" inflated this argumentative inquisitiveness to "hostility." Dkt. 23 at

9   11.  The reply further inflated it to a "very hostile" attitude. Dkt. 58-1 at 10. The defendant's

10  characterization of Mr. Wilson's attitude is inflated with every reference, but no factual basis is

11  offered to support these assessments. Moreover, the characterization appears to apply only to Mr.

12  Wilson's attitude *after* being placed in handcuffs.

13       Third, Officer Schaffer contends that Mr. Washington was large in size and that he was

14  concerned about being outnumbered. Dkt. 51 at 42. Officer Schaffer does not appear to contend

15  that Mr. Washington's demeanor was combative, however.

16       Fourth, Officer Schaffer maintains that he was concerned for his own safety because he

17  did not know whether the plaintiffs were armed and because Mr. Wilson was carrying a backpack.

18  Dkt. 51 at 42. It is important to note that Officer Schaffer is unsure as to whether he asked the

19  plaintiffs if they were armed. *Id.* He offers no specific indicators that the plaintiffs were or could

20  have been armed other than the fact that Mr. Wilson was carrying a backpack. In addressing

21  suspects, there is virtually always a *possibility* that a suspect may carry a weapon. The presence of

22  certain types of clothing or baggage may increase this risk. Without some specific indication that

23  the suspects may have been armed, the mere fact that Mr. Wilson carried a backpack is of

24  questionable relevance.

25       Finally, Officer Schaffer contends that separating the plaintiffs was necessary to compare

26  their answers for consistency. Dkt. 38-1 at 10-11. Neither party has addressed the availability of

27  means other than handcuffs for separating the plaintiffs.

28

1    Taken together, these allegations demonstrate that handcuffing the plaintiffs was not a
2   reasonably necessary precautionary measure. There is no evidence that the plaintiffs posed a
3   threat to officer safety or risk of flight beyond what any suspect might pose by virtue of being
4   unhappy about being detained and investigated. There is no evidence that a crime of violence had
5   occurred or was likely to take place. Officer Schaffer had no information that the plaintiffs were
6   armed beyond his knowledge that a backpack is capable of concealing a weapon. Under these
7   circumstances, the plaintiffs have sufficiently alleged that the use of handcuffs constituted an
8   arrest requiring the higher, probable cause standard.

9    **b. Probable Cause**

10    Probable cause exists if the facts and circumstances the officer knew at the time are
11   sufficient to warrant a prudent person, or one of reasonable caution, to believe that, in light of the
12   circumstances, the suspect has committed, is committing, or is about to commit an offense. *U.S.*
13   *v. Greene*, 783 F.2d 1364, 1367 (9th Cir. 1986).

14    Officer Schaffer contends that he relied upon the following information in determining that
15   the plaintiffs were engaged in vehicle prowling: (1) two African American males were observed
16   near a convertible Mercedes in the parking lot; (2) one of the men was observed reaching into the
17   glove box, taking something out, and throwing it back in; and (3) the men walked away from the
18   car and paused in the grassy area and by the Nordstrom entrance before finally entering the mall.
19   Dkt. 38-1 at 5. Officer Schaffer also relied upon his knowledge that (1) the location was known
20   for vehicle prowling, although there was apparently no report of vehicle prowling on that
21   particular day; (2) that convertibles are particularly susceptible to prowling; (3) that most mall
22   patrons do not pause in the grounds surrounding the mall before entering whereas vehicle
23   prowlers do; and (4) that the description of removing something from a convertible car may
24   amount to theft. *Id.* at 6. Viewed in the light most favorable to the plaintiffs, their innocuous
25   conduct in waiting by their cars, dropping a CD on the ground and returning it to the convertible,
26   and slowly making their way to the mall entrance, even when coupled with the fact that vehicle
27   prowling was common in the area, would not lead a reasonably prudent person to conclude that

28

ORDER
Page - 10

1  the plaintiffs were engaged in vehicle prowling justifying an arrest. The plaintiffs have therefore

2  succeeding in alleging a constitutional violation.

3        **c. *Miranda* Warnings**

4        Officer Schaffer contends that he was not required to *Mirandize* the plaintiffs. Dkt. 38-1

5  at 19. The complaint does not appear to make such an allegation, and the plaintiffs' response does

6  not address this point.

7        **2. CLEARLY ESTABLISHED**

8        To show that the law is clearly established, the plaintiff may establish that the conduct at

9  issue was previously held unlawful or that the unlawfulness is apparent. *See Creighton*, 483 U.S.

10  at 640. The plaintiffs do not cite legal authority establishing that the right to be free from arrest in

11  these circumstances is clearly established. They instead contend that the unlawfulness of Officer

12  Schaffer's conduct was obvious or apparent. *See* Dkt. 50-1 at 6. Officer Schaffer contends that

13  the plaintiffs fail to meet their burden but has not offered evidence to show that the right at issue

14  is not clearly established. *See* Dkt. 38-1 at 20-21, Dkt. 58-1 at 13.

15        It is clearly established that the use of handcuffs transforms an investigative detention into

16  an arrest unless it is reasonably necessary to preserve the status quo or protect officer safety. *See,*

17  *e.g., U.S. v. Patterson*, 648 F.2d 625, 633 (9th 1981) (prevent flight); *Bautista*, 684 F.2d at 1289

18  (men appeared nervous and were suspected of armed robbery). Here, Officer Schaffer's initial

19  contact with and handcuffing of the plaintiffs was nearly simultaneous. In the period of time

20  before they were handcuffed, the plaintiffs did not exhibit behavior threatening Officer Schaffer's

21  safety. Mr.Wilson's backpack, Mr. Washington's size, and the fact that the suspects outnumbered

22  Officer Schaffer, absent any behavior suggesting the plaintiffs were violent or would attempt to

23  flee, render the use of handcuffs tantamount to an arrest.

24        The right to be free from arrest absent probable cause is also clearly established. *See*

25  *Lambert*, 98 F.3d at 1186. The plaintiffs' actions would not lead a reasonably prudent person to

26  conclude that the plaintiffs had committed a crime. The right to be free from arrest under these

27  circumstances is clearly established.

28

**3. REASONABLENESS**

1

If Officer Schaffer demonstrates that considering what he knew at the time, an officer

could have reasonably (although mistakenly) believed that handcuffing the plaintiffs was lawful, he

is entitled to qualified immunity.

Officer Schaffer contends that a reasonable officer could have believed that his conduct

was lawful because the case law concerning search and seizure "fall[s] short of providing clear

guidance dispositive of the myriad factual situations that arise." Dkt. 38-1 at 21. He notes that

there are no bright line rules for when the length of the investigation or the use of handcuffs

convert a stop into an arrest. *Id.* He contends that he was forced to act quickly and did not have

time to reflect before taking action. *Id.* These arguments could be made for virtually any

investigative detention, and Officer Schaffer does not point to any exigent circumstances.

Essentially, Officer Schaffer would have the court hold that police officers always enjoy qualified

immunity by virtue of how fact-specific and time sensitive police work can be. Officer Schaffer

fails to specifically reference how the plaintiffs' actions and demeanor would lead a reasonable

officer to conclude that handcuffing was appropriate. The court should therefore hold that Officer

Schaffer is not entitled to qualified immunity.

**D. UNREASONABLE SEARCH AND SEIZURE**

Officer Schaffer moves for summary judgment on the plaintiff's unreasonable search and

seizure claim on the grounds that he had reasonable suspicion and that the detention did not

constitute an arrest.

Section 1983 is the procedural device for enforcing substantive rights provisions of the

Constitution and federal statutes. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Section 1983 plaintiffs must allege an independent substantive basis for relief. *Id.* It provides as

follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
> any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

1

2  42 U.S.C. § 1983. The plaintiffs must demonstrate a (1) a violation of rights protected by the

3  Constitution or by federal statute, (2) proximately caused (3) by conduct of a person (4) acting

4  under color of state law. *Crumpton v. Gates*, 947 F.2d at 1420.

5      The Fourth Amendment provides, "The right of the people to be secure in their persons,

6  houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .

7  ." U.S. Const. Amend. IV. As the above qualified immunity analysis sets forth, there is sufficient

8  information in the record upon which a reasonable jury could conclude that the plaintiffs' rights to

9  be free from unreasonable searches and seizures under the Fourth Amendment were violated. The

10  court should therefore deny the motion with respect to the search and seizure claim.

11  **E. RACIAL DISCRIMINATION**

12      Washington's Law Against Discrimination provides as follows:

13      The right to be free from discrimination because of race, creed, color, national origin, sex,
        sexual orientation, or the presence of any sensory, mental, or physical disability or the use
14      of a trained dog guide or service animal by a disabled person is recognized as and declared
        to be a civil right.
15
16  RCW 49.60.030. The amended complaint alleges that the defendants "engaged in discriminatory

17  conduct on the basis of race interfering with Plaintiffs' right to engage in commerce at the

18  Vancouver Mall." Dkt. 8 at 11. It is unclear whether this is intended to reference RCW 49.60.030

19  (f) ("The right to engage in commerce free from any discriminatory boycotts or blacklists.").

20      Officer Schaffer contends that summary judgment is appropriate because direct evidence

21  of racial bias is lacking and attempts to analogize the plaintiffs' claim to Title VII. *See* Dkt. 38-1

22  at 22. The City of Vancouver ("the City") contends that respondeat superior, the plaintiffs' only

23  theory of imposing municipal liability, does not apply. Dkt. 37-1 at 8. In its reply, the City also

24  attempts to analogize to public accommodation claims. Dkt. 52-1 at 2.

25      In response, the plaintiffs assert that Office Schaffer was motivated by race because he

26  found two African American males standing in close proximity to a convertible Mercedes and a

27

28

ORDER
Page - 13

Lexus to be suspicious. Dkt. 50-1 at 18. Because they admit that there is no direct evidence of racial bias by Officer Schaffer or the City, they apparently ask the court to infer such bias. *See, e.g.,* Dkt. 38-7 at 9-10 (No evidence of racial slurs or comments). The response offers no legal authority allowing for such an inference. It does not clarify the legal basis for the discrimination claim and makes no reference to the record. Because the plaintiffs have failed to explain and defend the parameters of their discrimination claim, summary judgment should be granted for the defendants on this claim.

**F. CONSPIRACY**

The amended complaint alleges that Officer Schaffer conspired with the security guards to violate the plaintiffs' civil rights. Officer Schaffer moves for summary judgment on this claim on the sole grounds that the plaintiffs are unable to establish a constitutional violation. Dkt. 38-1 at 24. Because a reasonable jury could conclude that a constitutional violation occurred and Officer Schaffer offers no other grounds upon which the court may grant summary judgment on this claim, the motion should be denied in this respect.

**E. ATTORNEY'S FEES**

The City moves for attorney's fees under 42 U.S.C. § 1988 because the plaintiffs failed to allege that the City participated in Officer Schaffer's alleged wrongdoing. Dkt. 37-1. 42 U.S.C. § 1988 provides, "In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. 1988(b). Merely because a party prevails does not entitle the party to attorney's fees, however. *Patton v. County of Kings,* 857 F.2d 1379, 1381 (9th Cir. 1988). In order to award fees to a prevailing civil rights defendant, the district court must determine that the plaintiff's claims are "unreasonable, frivolous, meritless, or vexatious." *Id.*. The

court must determine first whether the defendant is a prevailing party for purposes of § 1988 and then whether the plaintiff's claims were sufficiently meritless.

Here, the City is not a prevailing party for purposes of § 1988.  A prevailing party is one that prevails on the merits of the case. *Branson v. Nott*, 62 F.3d 287, 293 (9th Cir. 1995). The plaintiffs' § 1983 claim against the City was dismissed on August 29, 2006, pursuant to the plaintiffs' request. Dkt. 49 at 2. In dismissing the claim, the court did not reach the merits. The court should therefore deny the motion for attorney's fees.

### III. ORDER

Therefore, it is hereby

**ORDERED** Defendant City of Vancouver's Motion for Summary Judgment (Dkt. 37) is **GRANTED IN PART** and **DENIED IN PART** as follows: With respect to the plaintiffs' second (harassment) and third (discrimination) claims, the motion is **GRANTED**, and the City of Vancouver is **DISMISSED**. With respect to the City's request for attorney's fees, the motion is **DENIED**. Defendant Police Officer Brian Schaffer's Motion for Summary Judgment (Dkt. 38-1) is **GRANTED IN PART** and **DENIED IN PART** as follows: With respect to the plaintiffs' second (harassment), third (discrimination), and fourth (racial profiling) claims, the motion is **GRANTED**, and these claims are **DISMISSED**. With respect to the plaintiffs' first (42 U.S.C. § 1983) and fifth (conspiracy under 42 U.S.C. § 1983) claims, the motion is **DENIED**. Officer Schaffer's motion to strike is **GRANTED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 8th day of September, 2006.

Robert J. Bryan
United States District Judge

ORDER
Page - 15